IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | 4:08CR3001 |
| | ) | |
| v. | ) | |
| | ) | |
| SANTIAGO LOPEZ-MENDOZA, | ) | **MEMORANDUM AND ORDER** |
| | ) | |
| Defendant. | ) | |

I now rule upon the pending objections to the presentence report. I make the following findings of fact and conclusions of law:

1.   I find that the Jessica Roldan, who testified in this court, was credible. Except as noted below, Roldan had no knowledge of the defendant. In particular, she did not lend Lopez-Mendoza her car. In contrast, I find that the defendant's testimony (that someone using the name Jessica Roldan lent him the car) was not credible. At the very least, the story was highly implausible.

2.   I find that Lopez-Mendoza lied to the court in February of 2009[1] and to government investigators in July of 2008 about Jessica Roldan.[2] He lied about knowing Jessica Roldan, he lied about Jessica Roldan lending him the car, he lied about Jessica Roldan working at a restaurant run by Argentinians, and he lied about the true facts and circumstances regarding how he came into possession of Roldan's

---

[1] *See* filing 138 for the transcript of the evidentiary hearing.

[2] *See* Exhibit 104 for the DEA agent's summary of the defendant's interview. *See also* PSR ¶ 23 (also summarizing the interview). Lopez-Mendoza has specifically reaffirmed the statements he made to the government investigators. *See* Exhibit 101 ¶ 4. Thus, his statements were not the product of mistake or misunderstanding.

auto.  Since that car was later found to contain 1.21 kilograms of heroin hidden in it and Lopez-Mendoza was seated in the vehicle under a claim of bailment from Roldan, these lies were material.

3. I find that Lopez-Mendoza lied about Jessica Roldan because he could not deny the fact that the car was registered to her and because it is probable that Lopez-Mendoza wanted to avoid the government being led to back Jon Ortiz or other New Yorkers through the real Jessica Roldan.  Ortiz was Roldan's former boyfriend.  She purchased and financed the car in her name at the request of Ortiz but Ortiz maintained possession of it.  Ortiz later told Roldan that he had loaned the car to Lopez-Mendoza but that it had not been returned.  Ortiz was probably the person who gave the defendant the car to use.  It is likely that Ortiz did so to facilitate the transportation of drugs to or from New York.

4. I find that Ortiz viciously beat Jessica Roldan in an effort to keep her from testifying at the evidentiary hearing in this case.  As a result of that beating, Roldan was hospitalized for ten days suffering a seizure and a broken arm.  During the course of the beating, Ortiz instructed Roldan to tell the Nebraska investigators that "I didn't know anything" and "not to give anybody's names outs."  (Filing 138 at CM/ECF p. 81.)  It is probable that Ortiz was trying to protect himself and other individuals who are under investigation in New York.

5. I find that by giving a bogus story about a fictional Jessica Roldan who worked at a restaurant in New York run by Argentinians and who innocently lent him a car for a pleasure trip, Lopez-Mendoza hoped to satisfy two objectives.

> A. Lopez Mendoza first wanted to obtain the benefit of the safety-valve by seeming to honestly reveal an innocent connection with the car owner.  This was a connection that he could not deny given that the government seized papers

>   naming Roldan as the registered owner of the car at the time Lopez-Mendoza was arrested while seated in the drug-laden car.
>
> B. Lopez-Mendoza also wanted to insure that the government would not look hard for the real Jessica Roldan. Thus, he provided phony information about her and false information about how he came to possess the car. If the government looked for and found the real Jessica Roldan, prosecutors would be more likely to learn how the defendant actually came to possess the car. The government would also learn about Ortiz or other New Yorkers.[3] This would be bad for Lopez-Mendoza. Among other things, Lopez-Mendoza would be at risk of suffering from the same violence that Ortiz later inflicted upon Ms. Roldan.

6.   I reject Lopez-Mendoza' arguments that his statements about Roldan and the car were not material or not a part of the relevant conduct of the offense of conviction. Given that possession of the heroin is an essential element of the offense of conviction and given that the law defines "possession" to include joint and constructive possession, I conclude that the facts regarding the registered owner's involvement or noninvolvement with a car in which a substantial quantity of drugs were later found are central to the crime for which Lopez-Mendoza will be sentenced.

---

[3]The defendant was likely unaware that, shortly after the car was seized by authorities in Nebraska, Ortiz took the preemptive step of persuading Roldan to assist him in reporting the vehicle stolen to New York authorities. According to Roldan, Ortiz told the police that Santiago Lopez-Mendoza had borrowed the car, but had failed to return it. Prior to Ortiz's mention of the defendant's name to the police, Roldan had never heard of him.

7.     I find and conclude that Lopez-Mendoza has failed establish by the greater weight of the evidence that he truthfully provided to the government all information and evidence the defendant has concerning the offense of conviction. *See* U.S.S.G. § 5C1.2(a)(5).

8.     I find and conclude that the government has proven by the greater weight of the evidence that Lopez-Mendoza obstructed justice in July of 2008 and again in February of 2009 when he lied to government investigators and to this court regarding the matters described above. *See* U.S.S.G. § 3C1.1.  In particular, I find and conclude that the defendant's statements were willful, I find that the defendant's statements impeded the investigation, and also the sentencing, of the offense of conviction and I find that the obstructive conduct–the defendant's untrue statements–directly related to the offense of conviction.

9.     I find and conclude that because the defendant has obstructed justice he is not entitled to a reduction for acceptance of responsibility.  *See* U.S.S.G. § 3E1.1. n.4.  In particular, I find and conclude that this is not the extraordinary case in which a defendant should receive a reduction for acceptance of responsibility while also receiving an obstruction of justice enhancement.

10.    Subject to the comments of counsel and the probation officer before sentence is imposed, I tentatively recalculate the advisory Guidelines this way:

> A.    The base offense level is 32.
>
> B.    An obstruction of justice enhancement increases the offense level by 2 points.

> C. The total offense level is 34. This level is calculated without an adjustment for acceptance of responsibility.
>
> D. With a criminal history category of I, the custodial Guidelines range for the defendant is 151 to 188 months in prison.

IT IS ORDERED that the defendant's objection to the presentence report (filing 125) is denied. The government's objection to the presentence report (filing 129) is granted as provided herein but the government's objection is otherwise denied.

DATED this 12th day of May, 2009.

BY THE COURT:

*s/Richard G. Kopf*
United States District Judge